**Samuel S. STEELE and Margaret G. Steele, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 29021.

United States Court of Appeals, Fifth Circuit.

Nov. 11, 1970.

Roland J. Mestayer, Jr., Ward, Mestayer & Knight, Pascagoula, Miss., Thomas R. Ward, Meridian, Miss., for petitioners-appellants.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., U. S. Dept of Justice, K. Martin Worthy, Chief Counsel, Eugene F. Collins, Atty., Internal Revenue Service, Lee A. Jackson, Crombie J. D. Garret and Benjamin M. Parker, Attys., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before RIVES, WISDOM and GODBOLD, Circuit Judges.

PER CURIAM:

Steele[1] questions the correctness of the Commissioner's determination of income tax deficiencies for the years 1963 and 1964. For a number of years Steele was engaged in the real estate, insurance and mortgage business in Mobile, Alabama. During the years 1960–1964 he was also engaged in the business of constructing houses in Mobile County and across the bay in Baldwin County. With respect to his business of constructing houses, Steele elected to report his taxable income under the completed contract method of tax accounting as authorized under § 1.451–3 of the Treasury Regulations on Income Tax (1954 Code).[2] With respect to all other in-

---

[1] Samuel S. Steele and Margaret G. Steele filed joint federal income tax returns for 1963 and 1964. However, the transactions which gave rise to the federal income tax deficiencies asserted here arose solely from the acts of Samuel S. Steele.

[2] "§ 1.451–3 *Long-Term Contracts.* * * *
  "(b) *Methods.* Income from long-term contracts (as defined in paragraph (a) of this section), determined in a manner consistent with the nature and terms of the contract, may be included in gross income in accordance with one of the following methods, provided such method clearly reflects income:
  "(1) *Percentage of completion method.*
* * *
  "(2) *Completed contract method.* Gross income derived from long-term contracts may be reported for the taxable year in which the contract is finally completed and accepted. Under this method, there shall be deducted from gross income for such year all expenses which are proper-

come, Steele elected to use the cash basis method of tax accounting.

The basic dispute is the accounting treatment to be given second mortgage notes received by Steele in his business of constructing houses. In a case where the lot owner was able to pay cash for the house or to arrange his own financing, the sale by Steele was treated as a cash sale. In other cases, the savings and loan association which provided the primary financing received a first mortgage on the property and Steele, if he considered the amount involved not excessive, would accept a note secured by a second mortgage for the difference between the sales price and the first mortgage loan.

During all of 1963 and until July of 1964, the construction costs of each house were accumulated in an account by job name. To determine the profits upon the closing of a sale, all of the construction costs were deducted from (a) the sum of all cash received, including the down payment if any, and (b) 30% of the face value of the second mortgage promissory notes received by Steele. The balance of the face amount of the second mortgage notes was credited to an account entitled "Unearned Discount." Thereafter, as collections on second mortgage notes were received, all interest payments plus 70% of principal collections were credited to income.

In June of 1964, Steele stopped constructing homes as an individual and contracted with a corporation known as Hallmark Homes, Inc. (wholly owned by his son and daughter, whose ages were about 20 and who were attending college), at a fixed price for the actual construction work. Thereafter, Steele continued to determine and report profits from the sale of homes in the same manner except that no further charges were made to the "Work in Progress" account.

Upon audit of Steele's returns, the Commissioner determined "'that your method of reporting income from the sale of houses does not clearly reflect income and that each note secured by a second mortgage constitutes taxable income to you at its face value in the year of receipt, rather than at 30% of its face value as reported." The Tax Court sustained the Commissioner's determination in its memorandum finding of facts and opinion which comprise some seventeen pages of the appendix, T.C. Memo 1969–177.

Upon consideration we hold that the Tax Court's findings of fact are not in any respect clearly erroneous,[3] and we agree with most of the reasoning expressed in its opinion. We do not think that the Tax Court meant to hold that Steele could not employ a combination of the cash and completed contract methods of accounting with respect to his business of constructing houses, provided the method which he did use clearly reflected his income. If so, while doubtful of the soundness of any such holding, we find it not necessary to express our approval or disapproval. That is because we hold that the Tax Court properly sustained the Commissioner's determination that Steele's method of reporting income from the sale of houses did not clearly reflect his income, and properly held that the Commissioner did not abuse the discretion vested in him by 26 U.S.C. § 446(b).[4]

We agree also with the Tax Court's opinion that Steele "did not use a different method of accounting during the latter part of 1964, and there is no reason

---

ly allocable to the contract, taking into account any material and supplies charged to the contract but remaining on hand at the time of completion."

3. See 26 U.S.C. § 7482(a) ; Rule 52(a), Fed.R.Civ.P.

4. "(b) * * * If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."

for treating the second mortgage notes any differently than they should be treated prior to July 1964."

The decision of the Tax Court is therefore

Affirmed.